**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON**

JERRY SEABOLT,

       Plaintiff,

vs.                                  Civil Action No. _____6:12-cv-1891_____

JOSHUA A. VENSEL, individually,
JOE MARTIN, individually, BOB
NEWELL, individually, CITY OF
PARKERSBURG, a municipal
corporation, JOHN DOE # 1, and
JOHN DOE #2, JOHN DOE #3,
JOHN DOE #4, JOHN DOE #5,
and JOHN DOE #6.

       Defendants.

## COMPLAINT

       This complaint, brought pursuant to 42 U.S.C. Section 1983, 42 U.S.C. Section 1985, as well as the Fourth and Fourteenth Amendments to the United States Constitution, arises out of the Defendants' use of excessive force on the Plaintiff on or about October 15, 2011, in the City of Parkersburg, Wood County, West Virginia, within the Southern District of West Virginia, as well as the development and implementation of a pattern or practice of excessive force which led to the said incident.

## JURISDICTION

       This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1331 and 1343.

## PARTIES

       1.      The Plaintiff was at all times relevant hereto a resident of the City of Parkersburg, Wood County, West Virginia, within the Southern District of West Virginia.

2.      Defendant Joshua A. Vensel was at all times relevant hereto an officer of the Parkersburg Police Department, which is established, equipped and maintained by the City of Parkersburg, and was at all times relevant hereto acting under the color of law and within the scope of his employment.  Said Defendant is named herein in his individual capacity.

3.      Defendant Joe Martin was at all times relevant hereto the Chief of the Parkersburg Police Department, which is under the City of Parkersburg, and was at all times relevant hereto acting under the color of law and within the scope of his employment.  Said Defendant is named herein in his individual capacity.

4.      Defendant Bob Newell was at all times relevant hereto the Mayor of the City of Parkersburg, West Virginia, and was at all times relevant hereto acting under the color of law and within the scope of his employment.  Said Defendant is named herein in his individual capacity.

5.      Defendant City of Parkersburg, a municipal corporation, is a political subdivision of the State of West Virginia.  *See* West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29-12A-1, *et seq*.

6.      Defendant John Doe #1 is an officer of the Parkersburg Police Department, who is currently unidentified, but who was a participant in the conspiracy to develop, implement, foster and encourage a policy, custom, pattern and practice of excessive force as described in the June 2, 2011 letter written by John Triplett, a copy of which is attached hereto as Exhibit "1" (also referred to herein as the "Triplett Letter").

7.      Defendant John Doe #2 is an officer of the Parkersburg Police Department, who is currently unidentified, but who was a participant in the conspiracy,

development, and implementation, of a policy, pattern, or practice of excessive force as described in the June 2, 2011 letter written by John Triplett, a copy of which is attached hereto as Exhibit "1".

8.      Defendant John Doe #3 is an officer of the Parkersburg Police Department, who is currently unidentified, but who was a participant in the arrest of the Plaintiff on October 15, 2011 as described below as a "blond haired officer" in the allegations below.

9.      Defendant John Doe #4 is an officer of the Parkersburg Police Department, who is currently unidentified, but who was a participant in the arrest of the Plaintiff on October 15, 2011.

10.     Defendant John Doe #5 is an officer of the Parkersburg Police Department, who is currently unidentified, but who was a participant in the arrest of the Plaintiff on October 15, 2011.

11.     Defendant John Doe #6 is an officer of the Parkersburg Police Department, who is currently unidentified, but who was a participant in the arrest of the Plaintiff on October 15, 2011 as described below as the "older supervisor."


**<u>FACTS</u>**

12.     Plaintiff incorporates by reference the allegations in all previous paragraphs.

13.     On or about June 2, 2011, attorney John Triplett drafted a letter to several civil defense attorneys, as well as the Prosecuting Attorney of Wood County, on behalf

of his client, Officer Nathan Deuley of the Parkersburg Police Department, a copy of which is attached hereto as Exhibit "1".

14.    The said letter advised that several years earlier, Officer Deuley attended a departmental officers' meeting held on the second floor of the Parkersburg City Building, and that most members of the Parkersburg Police Department were in attendance.

15.    Officer Deuley and the other patrolmen were ordered to attend the meeting.

16.    During the course of the said meeting, Defendant Mayor Bob Newell advised Patrolman Dueley and others present that he was tired of small, frivolous complaints against the police department.  He advised the officers to the effect that if they were in a scuffle, with arrestees or pretrial detainees, to "beat their ass and put them in the hospital."  Newell went on to state that he knew how to deal with the insurance companies and for officers of the Parkersburg Police Department not to worry about that issue.  He would "handle" the insurance companies.

17.    In the said letter, Officer Deuley stated that the said remarks from Newell were "consistent with the behavior that [he] observed when he was a young patrolman and under the supervision of [Defendant Chief] Martin.

18.    In the said letter, Officer Deuley further stated that Newell's remarks were also consistent with the admonition that Defendant Newell gave Officer Deuley when Newell was Chief of Police, that "Parkersburg police doesn't breed pussies."

19.     Upon information and belief, Mayor Newell, Chief Martin and the City of Parkersburg, developed, implemented, fostered and encouraged a policy, custom, pattern and practice of using excessive force against arrestees and pretrial detainees.

20.     Upon information and belief, Mayor Newell, Chief Martin and the City of Parkersburg continue to implement their policy of using excessive force.

21.     On or about October 15, 2011, Defendants John Doe #3, #4, #5, and #6, who were on duty, approached and arrested the Plaintiff, Jerry Seabolt, for public intoxication, disorderly conduct, and obstruction.  John Doe #6 was, upon information and belief, a field supervisor.

22.     The Criminal Complaint filed against the Plaintiff by Officer B.J. Depue of the Parkersburg Police Department, who is believed to be one of the John Doe defendants, noted that "On 10-15-2011 the defendant was observed at Dollar General . . . .  The defendant had glassy blood-shot eyes and an odor of an alcoholic beverage.  While talking with the defendant under arrest, he became aggressive towards officers and had to be forcibly handcuffed."  A copy of the said Criminal Complaint is attached hereto as Exhibit "2".

23.     The Plaintiff had been standing in front of the Dollar General off of 7th Street in Parkersburg, West Virginia.  The three Parkersburg police officers, John Doe #3, #4 and #5 approached the Plaintiff and an acquaintance named David Hastings.  Mr. Hastings was waiting for a ride to his job and the Plaintiff had decided to come along.  An unidentified officer requested identification from both individuals, which was given.  One of the officers, identified by Mr. Hastings as being larger with short blonde hair, began referring to the Plaintiff by his name and began to be overly aggressive and

threatening to the Plaintiff.  According to Hastings, the blond haired officer said to the

Plaintiff, "if you don't shut up I'm going to punch you in the mouth."  The Plaintiff replied,

"if your going to hit me then just hit me."  The blond haired officer then said, "your going

to jail for public intox."  According to Hastings, the Plaintiff put his hands behind his

back.  As soon as they cuffed him, the blond haired officer and two other officers

grabbed him to transport him to the police cruiser.  Then the three officers slammed the

Plaintiff's head into the hood of a police cruiser, while the Plaintiff was handcuffed.

According to Hastings, the Plaintiff had not assaulted the officers in any way.  Hastings

states that the Plaintiff was not resisting - nor was he even being rude or disrespectful to

the officers.  Hastings heard the Plaintiff cry out in pain.  The officers then placed the

Plaintiff into a police cruiser.  The blond haired officer then approached David Hastings

and said, "do you hang out with this mother fucker?," referring to the Plaintiff, because

"he's getting ready to get an ass-whooping."  Hastings replied, "I know him but I don't

really hang out with him."  There was an older officer, who appeared to be a supervisor,

who was not physically involved in slamming the Plaintiff into the cruiser, but who

watched the whole incident.  According to David Hastings, the supervisor stood there

and watched and had no reaction the entire time.[1]

    24.    The Plaintiff was taken to the Wood County Holding Center for processing

following his arrest.  The Criminal Complaint (Exhibit "2"), sworn by Officer Depue,

states that "The Defendant, during processing, assumed a fighting stance towards

[Officer Depue], raising his fists and began to walk aggressively toward Officers [sic].

---

[1] David Hastings has never been interviewed by anyone regarding the Plaintiff's arrest other than counsel
for Plaintiff.

Sgt. J.A. Vensel subdued the Defendant with 1 closed fist strike to the head." *See* Exhibit "2".

25.     Defendant Vensel punched the Plaintiff in he face with his fist, which was captured by a surveillance camera.[2]  The Plaintiff was immediately knocked unconscious.

26.     Upon information and belief, at the time the Plaintiff was punched in the face, he had not assaulted any officer in the processing room.

27.     Following the punch to the face, the Plaintiff was transported to Camden Clark Medical Center where he was treated for his injuries and taken by the the Wood County Holding Center

28.     Shortly thereafter, an investigation was commenced by the West Virginia State Police and the Wood County Prosecuting Attorney against Officer Vensel.

29.     On October 31, 2011, Defendant Vensel, who had been an officer with the Parkersburg Police Department for seven years, was indicted by a Wood County special grand jury for battery against the Plaintiff as depicted in the surveillance video.

30.     On May 3, 2012, Defendant Vensel pled guilty to the battery of the Plaintiff which occurred at the Wood County Holding Center as described above.  Attached hereto as Exhibit "3" is a copy of the Plea Agreement entered into by Defendant Vensel and signed by his attorney and the judge.  According to the terms of the plea, Vensel pled guilty to battery against the Plaintiff, and agreed to surrender his law enforcement

---

[2] The video of Defendant Vensel punching the Plaintiff in the face has not yet been released to the public or to Plaintiff's counsel due to the criminal prosecution of Defendant Vensel.  Public representations have been made by the Prosecuting Attorney of Wood County regarding the existence of the video.  The video was captured by the same camera which captured the beating of Brian Sawyer on October 29, 2009. Plaintiff's counsel has been told that the Seabolt video, however, does not contain skips as does the Sawyer video, due to the fact that the camera was switched from motion activation to 24/7 recording following the poor quality of the Sawyer video.

certification and agreed that he will not seek employment as a law enforcement officer anywhere in the U.S.  Another term of the Plea Agreement was that Vensel will be forthright and truthful with the prosecutor's office and other law enforcement agencies with regard to the Seabolt beating.  Defendant Vensel was sworn as a witness and testified before the Circuit Court of Wood County, West Virginia in order to enter his guilty plea.  Attached hereto as Exhibit "4" is a copy of the hearing transcript wherein Defendant Vensel pled guilty and admitted to striking the Plaintiff with a closed fist in the head in violation of the law.

31.     Following the beating described herein which he suffered, the Plaintiff suffered mentally and physically.  For some time following the beating, his jaw was swollen to the size of a baseball and he had abrasions to his head.  The Plaintiff also suffered from damage to his head, with some memory loss.  He is having recurrent problems with his jaw.

<u>COUNT ONE - EXCESSIVE FORCE UNDER 42 U.S.C. 1983 IN</u>
<u>VIOLATION OF THE FOURTH AMENDMENT</u>

**(Defendants John Doe #3, #4 and #5)**

32.     Plaintiff incorporates by reference all the allegations contained in the previous paragraphs.

33.     Defendants John Doe #3, #4, and #5 used excessive force against the Plaintiff during his arrest, as described above in detail.

34.     When Defendants John Doe #3, #4, and #5, slammed the Plaintiff's head into the hood of the police cruiser, no objectively reasonable officer could have perceived the Plaintiff as posing an immediate threat to the safety of the officer or others.

35.     The Plaintiff was handcuffed at the time the said force was used against him.

36.     The Plaintiff was neither armed nor suspected by the officers of being armed at the time the said force was used against him.

37.     Plaintiff was not resisting arrest or assaulting the officers at the time the said force was being used against him.

38.     Plaintiff was under arrest for public intoxication at the time the said use of force was used against him - an extremely minor charge.  The arresting officer later added charges for disorderly conduct and resisting arrest.  Defendant did not plead guilty to any of the charges.

39.     The said officers' actions were objectively unreasonable, unlawful, unwarranted, and in violation of the Plaintiff's clearly established procedural and substantive rights, including the Fourth Amendment of the United States Constitution.

40.     The said officers' actions were willful, wanton, intentional, malicious, and done with a callous and reckless disregard for the Plaintiff's Fourth Amendment right to be free from excessive force.

41.     Plaintiff suffered harm, including personal injuries, extreme emotional distress, medical expenses, severe pain, and continues to suffer damages, and is entitled to recover damages for the same.

<u>COUNT TWO - EXCESSIVE FORCE UNDER 42 U.S.C. 1983</u>
<u>VIOLATION OF THE FOURTEENTH AMENDMENT</u>

**(Defendant Joshua A. Vensel)**

42.     Plaintiff incorporates by reference all the allegations contained in the previous paragraphs.

43.     Defendant Vensel used excessive force against the Plaintiff at the Wood County Holding Center, as described above in detail, and as was captured on surveillance video.

44.     When Defendant Vensel punched the Plaintiff in the face, he inflicted unnecessary and wanton pain and suffering on the Plaintiff, knocking him immediately unconscious.  The officers at the scene called 911.

45.     At the time Defendant Vensel attacked the Plaintiff there was no need for the use of physical force to be used against the Plaintiff.

46.     Defendant Vensel physically attacked the Plaintiff in response to mere words which were being uttered by the Plaintiff rather than in response to any physical assault by or threat from the Plaintiff.

47.     Even if there was a need for force to be applied, Defendant Vensel applied an excessive amount of force, as evidenced by the surveillance video, as well as the documented medical injuries suffered by the Plaintiff, including swelling of the jaw, abrasions, and recurring jaw pain.

48.     The force used by Defendant Vensel was not applied in a good faith effort to maintain and restore discipline, but rather was applied maliciously and sadistically for the purpose of causing harm.

49.     Defendant Vensel's actions, as admitted under oath by defendant Vensel, were objectively unreasonable, willful, wanton, intentional, malicious and done with a

callous and reckless disregard for the Plaintiff's clearly established Fourteenth Amendment right to be free from excessive force.

50.     Plaintiff suffered harm, including personal injuries, extreme emotional distress, medical expenses, severe pain, and continues to suffer damages, and is entitled to recover damages for the same.

## COUNT THREE - MUNICIPAL LIABILITY
## UNDER 42 U.S.C. 1983

### (Defendant City of Parkersburg)

51.     Plaintiff incorporates by reference all allegations contained in the previous paragraphs.

52.     The City of Parkersburg, through Defendant Newell and Defendant Martin, instituted an official policy, custom, and practice of using excessive force against arrestees and pretrial detainees in violation of the Fourth and Fourteenth Amendments to the United States Constitution, as evidenced by the June 2, 2011 letter from John Triplett, a copy of which is attached hereto as Exhibit "1".  Specifically, Parkersburg police officers were instructed to and encouraged to inflict physical injuries, beatings, and to cause physical harm to people during the course of arrests and bookings to necessitate their hospitalization.  Upon information and belief, this policy, custom and practice remains in effect.

53.     The actions of the City of Parkersburg employees, as described in Counts One and Two above, were taken in furtherance of the said official policy, custom, and practice of using excessive force against arrestees and pretrial detainees.

54.     In furtherance of the said policy, custom and practice, Parkersburg police officers have committed numerous other civil rights violations in violation of the Fourth and Fourteenth Amendment rights to be free from excessive force, including, but not limited to, the beating of Timothy Mazza in 2009[3] and the beating of Terry Ratliff in 2008[4].  Upon information and belief, there were other incidents of excessive force violations during this time period - including incidents where settlement money was paid to the victims.

55.     Despite agreeing to pay substantial sums of money to settle the Mazza and Ratliff allegations, the City of Parkersburg maintains that their officers engaged in no wrongdoing.[5]  Regarding the Mazza settlement, the Charleston Gazette newspaper reported that "Newell said . . . that the city's insurance company made a 'business decision' to settle, but denied that the officers had done anything wrong."  Moreover, Defendant Newell told the Charleston Gazette in a 2010 article[6] that he blamed the Mazza lawsuit "on what he says is West Virginia's need for tort reform."  In that article, Defendant Newell and Defendant Martin admitted to the reporter that they had not investigated the Mazza allegations prior to making their public statements disputing Mazza's claims.

56.     Regarding the Ratliff settlement, the News and Sentinel newspaper reported that "Newell said the city admits no fault in the settlement. 'We had nothing in

---

[3] Timothy Mazza's excessive force lawsuit was settled by the City of Parkersburg for $100,000.00.

[4] Terry Ratliff's excessive force lawsuit was settled by the City of Parkersburg for $70,000.00

[5] *See* "Parkersburg Mayor Instituted Beatings Policy, Officers Says", http://www.wvgazette.com/News/201112130133?page=2&build=cache ; *see also* "City to Settle Police Abuse Lawsuit for $70,000.00", http://www.newsandsentinel.com/page/content.detail/id/550137/City-to-settle-police-abuse-laws---.html

[6] *See* "Gay Man Claims Parkersburg Police Beat Him", http://sundaygazettemail.com/News/201006260514

the negotiations . . . [a]s I said before, it is their prerogative.  They weigh how much it will cost to settle as opposed to fight it."  However, long after the Ratliff settlement, when Defendant Vensel was caught on video punching the Plaintiff, Defendant Newell reported to the media that he asked the FBI to investigate the Ratliff beating as well as the Seabolt beating.[7]  In that same article, Newell told the reporter that "I want to make sure there is a lot of transparency in what we do . . . [w]hen police officers get into trouble it is always good to have a federal agency look into those allegations."  However, when the Mazza lawsuit was initially filed, rather than to seek FBI help, Newell told the reporter that "if what Mazza claims is true, he should have talked to police - not a lawyer and the news media."[8]

57.     Defendant Newell originated the policy of the Parkersburg Police Department for the routine employment of excessive force against arrestees and pretrial detainees, and has also been actively involved in ensuring the continuation of this policy in the future.  By denigrating the victims of excessive force and their lawyers in the news media when such cases were prosecuted, Defendant Newell has defended this conduct, thereby effectively ensuring that such policy, practice and custom of using excessive force will continue.  Defendant Newell's conduct in this regard has also had a chilling effect by obscuring the truth behind serious allegations of use of excessive force.  It was only after the Mazza and Ratliff settlements were made that the Triplett

---

[7] *See* "FBI Civil Rights Probe Targets Parkersburg Police", http://wvgazette.com/News/201111070018

[8] *See* "Gay Man Claims Parkersburg Police Beat Him", http://sundaygazettemail.com/News/201006260514

Letter was released to the public.[9]  The Triplett Letter was ultimately provided to attorney Michael Clifford pursuant to a Freedom of Information Act Request to the Prosecuting Attorney of Wood County.  *See* November 30, 2011 FOIA Response Letter from Jason Wharton, a copy of which is attached hereto as Exhibit "5".

58.     Upon information and belief, the policies and procedures of the Parkersburg Police Department also contain a policy, custom and practice of excessive force in that they allow for the use of physical force against a subject in response to mere words, such as verbal threats or provocations.  Additionally, the said policies and procedures allow for the striking and punching of subjects in the head.  Upon information and belief, Defendant Vensel, and other PPD officers, were taught to commit excessive force violations which were clearly established violations of civil rights under the Fourth and Fourteenth Amendments to the United States Constitution.

59.     The Mayor of Parkersburg, Defendant Bob Newell, who was primarily responsible for instituting the said policy, custom and practice, at all relevant times hereto had final policymaking authority in the area of use of force by the Parkersburg Police Department, and was himself a former Chief of Police of the Parkersburg Police Department.  The Chief of the Parkersburg Police Department, Joe Martin, was responsible for implementing the said policy, custom and practice.

60.     As a direct and proximate result of the said policy, custom and practice, the Plaintiff was damaged on October 15, 2011 when excessive force was used against him as described in Counts One and Two above for which he is entitled to recover.

---

[9] Defense counsel for the City of Parkersburg in the Mazza litigation refused to provide a copy of the letter to Mazza's counsel when it was requested in discovery.  Ultimately the case was settled while a motion to compel production of the letter was pending.

COUNT FOUR - SUPERVISORY LIABILITY
UNDER 42 U.S.C. 1983

**(Defendant Bob Newell, Defendant Joe Martin,
Defendant John Doe #1, Defendant John Doe #2, Defendant John Doe #6)**

61.     Plaintiff incorporates by reference all allegations contained in previous paragraphs.

62.     Numerous supervisors in the chain of command in the Parkersburg Police Department, from Mayor Newell, to Chief Martin, to field supervisors John Doe #1 and John Doe #2, and John Doe #6 had actual or constructive knowledge that their subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the Plaintiff; namely using excessive force against arrestees and pretrial detainees.  Their knowledge is evidenced by the Triplett Letter, attached hereto as Exhibit "1", as well as by the documented beatings of Timothy Mazza and Terry Ratliff.

63.     The said supervisors' response to that knowledge was so inadequate as to show deliberate indifference to, or tacit authorization of, the practices of using excessive force.

64.     As a direct and proximate result of the the said supervisors' inaction the Plaintiff suffered constitutional violations and was damaged, as described in Counts One and Two above, for which he is entitled to recover.

65.     Defendant John Doe #6 personally observed the excessive force violation by John Does #3, #4, and #5 which occurred during the Plaintiff's arrest and yet, according to witness David Hastings, did absolutely nothing to help the Plaintiff - even after hearing John Doe #3 threaten to punch the Plaintiff in the face.  He then watched

the Plaintiff's head being slammed into the hood of a police cruiser.  Instead of helping

the Plaintiff, John Doe #6 showed a deliberate indifference to, and a tacit authorization

of, the excessive force which was being used against the Plaintiff.  As a direct and

proximate result of John Doe #6's inaction, the Plaintiff suffered damage for which he is

entitled to recover.

<u>COUNT FIVE - CONSPIRACY TO DEPRIVE CIVIL</u>
<u>RIGHTS UNDER 42 U.S.C. 1985</u>

**(Defendant Bob Newell, Defendant Joe Martin,**
**Defendant John Doe #1, Defendant John Doe #2)**

66.     Plaintiff incorporates by reference all allegations made in the previous

paragraphs.

67.     Defendant Bob Newell, Defendant Joe Martin, Defendant John Doe #1

and Defendant John Doe #2, as separate individuals involved in law enforcement in

Parkersburg, West Virginia, together conspired to deprive arrestees and pretrial

detainees, including the Plaintiff herein, of their clearly established right to be free from

excessive force under the Fourth and Fourteenth Amendments to the United States

Constitution.

68.     The said conspiracy is evidenced by the Triplett Letter, a copy of which is

attached hereto as Exhibit 1", which states that the said individuals conducted and

participated in a meeting wherein law enforcement officers were ordered to unlawfully

beat and hospitalize arrestees and pretrial detainees.

69.     Upon information and belief, other Parkersburg Police officers will attest to

the veracity of the Triplett Letter, as well as to the existence of a use of force policy

which was, and remains, in blatant disregard for Fourth Circuit excessive force case

law: namely the right not to be subjected to physical attack in response to mere words, and the right not to be struck and punched in the head by police officers.

70.     As a direct and proximate result of the said conspiracy, the Plaintiff was injured, as alleged in Counts One and Two above, and is entitled to recover for his injury against any one or more of the conspirators pursuant to 42 U.S.C. 1985(3).


**PRAYER**

WHEREFORE, based on the above stated facts, the Plaintiff respectfully requests that this Honorable Court award:

1.     Damages against the Defendants in an amount to be determined at trial which will fairly and reasonably compensate the Plaintiff for:

a.     Past, present and future medical expenses;

b.     Past, present and future pain and suffering;

c.     Loss of enjoyment of life;

d.     Psychological and emotional distress;

e.     Any other compensatory damages to be proven at trial;

f.     Punitive damages against the individual Defendants in an amount to be determined at trial;

g.     Reasonable attorney fees and costs;

h.     Any other relief that this Court deems is just and fair;

i.     All other damages provided by law;

j.     Injunctive relief requiring appropriate training, supervision and discipline in order to remedy all constitutional deprivations which the Plaintiff suffered;

      k.     Declaratory judgment relief establishing the Defendants' above-described

conduct violates the Plaintiff's clearly established constitutional rights.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

                            JERRY SEABOLT
                            By Counsel

/s John H. Bryan
John H. Bryan (WV Bar No. 10259)
Martha J. Fleshman (WV Bar No. 8542)
JOHN H. BRYAN, ATTORNEYS AT LAW
611 Main Street
P.O. Box 366
Union, WV 24983
(304) 772-4999
Fax: (304) 772-4998
jhb@johnbryanlaw.com

for the Plaintiff

/s Michelle Rusen
Michele Rusen (WV Bar No. 3214)
RUSEN & AUVIL, PLLC
1208 Market Street
Parkersburg, WV 26101
(304) 485-3058
Fax: (304) 485-6299

for the Plaintiff